LAWRENCE KENNEY, Respondent, *v.* LOUIS J. APGAR et al., Appellants.

THOMAS MILLEA et al., Respondents.

In a proceeding to foreclose a lien under the Mechanics' Lien Law of 1862, for the counties of Kings and Queens (Chap. 478, Laws of 1862), other lienors, subsequent as well as prior, may properly be made parties defendant, for the purpose of having the amounts and priorities of their respective liens established, and the judgment may properly provide for a sale of the premises in behalf of all lienors when made parties, and for the payment to them of their liens according to their rights respectively.

*It seems* that the same principle is applicable generally to the foreclosure of mechanics' liens, in the absence of any statutory provision to the contrary, and that it is the most convenient and expedient practice.

Where a judgment in such a proceeding does not conform to the decision of the court, the remedy of the party aggrieved is not by appeal, but by application to the court to correct the judgment.

In such a proceeding the owner may be adjudged to pay the costs of the proceeding in addition to the sum found to be due the contractor; the court has power, also, to adjudge costs against the owner to the co-defendants, lienors.

A lien may properly be acquired under said act for the expense of constructing a sidewalk on the streets adjoining the premises although the owner's title only extends to the side, not to the center of the street;

the sidewalk is an appurtenance to the building within the meaning of the act.

In such a proceeding after trial before the court had begun, and near the conclusion of the direct examination of the plaintiff, the owners demanded that the issues between them and their co-defendants, who claimed as lienors, should be tried by jury. The court overruled the demand on the ground that it was made too late. *Held* no error ; that the right, if any existed, was waived by failing to claim a trial by jury before the production of any evidence (Code of Civ. Proc., § 1009, subd. 4) ; but *held*, that as the action was in equity no such right existed.

Under said act it is not necessary to the validity of a lien, that a copy of the notice of lien should be served upon the owner; that is only necessary to prevent payments by the owner to the contractor, after filing of the lien, to the prejudice of the lienor.

The contractors gave an order on the owner for $390, payable out of the last payment on the contract ; the owner paid $350 in full settlement of the order. *Held*, that he was entitled to credit for the full amount of the order.

(Argued October 10, 1883 ; decided October 23, 1883.)

APPEAL by defendants Apgar and Pedersen from a judgment of the General Term of the City Court of Brooklyn, which modified, and affirmed as modified, a judgment in favor of plaintiffs, and of the other defendants, entered upon a decision of the court on trial at Special Term.

The nature of the proceeding and the material facts are stated in the opinion.

*H. C. M. Ingraham* for appellants. The equitable assignments of portions of the $1,300 fund, amounting to $659, which precede the plaintiffs' claim, are entitled to be first deducted from the fund. ( *Young Stone Dressing Company* v. *Wardens of St. James' Church,* 61 Barb. 489; *Munger* v. *Shannon,* 61 N. Y. 231; *Eurichs* v. *DeNull,* 75 id. 370.) The word "appurtenances" cannot extend the application of the statute to work done on lands belonging to another than the owner named in the notice of lien and set forth in the complaint. Appurtenances are incorporeal hereditaments, not land in streets. (*Kings County F. Ins. Co.* v. *Stevens,* 87 N. Y. 287; *Mott* v. *Mott,* 68 id. 246; *White's B'k of B.* v. *Nicholls,* 64 id. 65; *English*

v. *Brennan*, 60 id. 609; *Bissell* v. *N. Y. C. R. R. Co.*, 23 id. 61; *Moran* v. *Chase*, 52 id. 346.) If the plaintiff has failed to show himself entitled to judgment, then there can be no judgment against either of the appellants in favor of any party herein. (*Hall* v. *Ditson*, 55 How. 19–31; *Burroughs* v. *Tastevan*, 75 N. Y. 567.) This action must be conducted strictly in accordance with the provision of the Lien Law, as the law is an innovation upon the common law. (*Mushlitt* v. *Silverman*, 50 N. Y. 360; *Burroughs* v. *Tastevan*, 75 id. 567.) Section 1204 of the New Code is but the re-enactment of section 274 of the former Code, and the "affirmative relief" intended is relief against the plaintiff and not against a co-defendant. (*People* v. *A. & S. R. R. Co.*, 5 Lans. 25–34; *Mech's & T. Loan Institution* v. *Roberts*, 1 Abb. 381; *Kay* v. *Whittaker*, 44 N. Y. 576; *Tracy* v. *N. Y. Steam F. Co.*, 1 E. D. Smith, 349; *Emery* v. *Erskine*, 66 Barb. 9; *Wells* v. *Smith*, 7 Abb. 261; *Stephens* v. *Hall*, 2 Robt. 674; *Norbury* v. *Seeley*, 4 How. Pr. 24; *Lansing* v. *Hadsall*, 26 Hun, 619; *Albany City Savings Institution* v. *Burdick*, 87 N. Y. 40; *Wheelock* v. *Lee*, 74 id. 495, 500; *People* v. *A. & S. R. R. Co.*, 57 id. 161; *Davis* v. *Morris*, 36 id. 569.) Defendants Rope were not proper parties to the action, they having filed their notice of lien subsequently to the filing of the plaintiff's notice. (*Kaylor* v. *O'Connor*, 1 E. D. Smith, 672.) If they were proper parties they must be left to surplus proceeding to determine their claim according to the provisions of the Lien Law. (*Beekman* v. *Gibbs*, 8 Paige, 511; *Mech's & Traders' Ins.* v. *Roberts*, 1 Abb. 381; *Tower* v. *White*, 10 Paige, 395; *Drury* v. *Clark*, 16 How. 424; *Smart* v. *Bement*, 4 Abb. Ct. of App. Dec. 253.) The facts found by the court are not sufficient to warrant adjudging a lien. (*Post* v. *Campbell*, 83 N. Y. 279; *Spencer* v. *Barnett*, 35 id. 94; *Hubbell* v. *Schreyer*, 14 Abb. Pr. [N. S.] 284.)

*Nathaniel C. Moak* for Thomas Millea, respondent. This suit having been commenced to foreclose one of several liens filed against the property in question, under chapter 478 of the

Laws of 1862 (page 947), sections 12 and 13, authorized the making of the various claimants, the owners, and the contractors, parties, and the adjustment of their respective rights. (§ 2, p. 948, subd. 4 ; *Graff* v. *Rosenburgh*, 6 Abb. Pr. [N. S.] 428, note ; Kneeland on Mechanics' Liens [2d ed.], 217 ; *Kayler* v. *O'Connor*, 1 E. D. Smith, 672 ; *Sullivan* v. *Decker*, id. 699 ; *Abham* v. *Boyd*, 5 Daly, 321, 325 ; Code of Civil Procedure, §§ 1204, 521 ; *Albany, etc.*, v. *Burdick*, 87 N. Y. 40, 45–6 ; *Durham* v. *Lee*, id. 599, 604 ; 47 N. Y. Supr. Ct. 174 ; 60 How. Pr. 335 ; *Clegg* v. *American, etc.*, id. 498.) Failure to serve a copy of the notice of lien on Pedersen, the owner, did not invalidate the lien. (*Hall* v. *Sheehan*, 69 N. Y. 618.) The appearance by Pedersen was sufficient, without service. (*Catlin* v. *Ricketts*, 16 W'kly Dig. 327 ; 2 Civ. Pro. 201.) This court has power to modify the judgments of the General or the Special Terms, and may affirm the judgment as to the respondent Millea, and reverse it as to either or all the other defendants. (*Hubbell* v. *Meigs*, 50 N. Y. 480 ; *Hoag* v. *Lamont*, 60 id. 96, 101 ; *Simar* v. *Canaday*, 53 id. 298 ; *Bullis* v. *Montgomery*, 50 id. 352 ; *McIntosh* v. *Ensign*, 28 id. 169 ; *Giraud* v. *Beach*, 4 E. D. Smith, 27 ; *Farrell* v. *Calkins*, 10 Barb. 348.) The action being an equitable one, no technical error, not affecting the merits, is cause for reversal. (*Forest* v. *Forest*, 25 N. Y. 501, 510 ; *People* v. *Gonzales*, 35 id. 60 ; *Vandervoort* v. *Gould*, 36 id. 644.) The demand made by Mr. Ingraham for a trial by jury came too late. It should have been made, if at all, before any evidence was introduced. (*Keiley* v. *Dusenbury*, 42 N. Y. Supr. Ct. 239 ; 77 N. Y. 597 ; *Baird* v. *Mayor*, 74 id. 382, 386 ; *People* v. *Eckler*, 19 Hun, 613–4.)

*F. P. Bellamy* for Bierds *et al.*, respondents. The judgment in favor of respondent Bierds was not appealable to this court. (Code, § 191 ; *Wiley* v. *Brigham*, 81 N. Y. 13 ; *Wheeler* v. *Scofield*, 67 id. 311 ; *Pennie* v. *Cont. L. Ins. Co.*, id. 278 ; *Produce B'k* v. *Morton*, id. 199 ; *Nichols* v. *Voorhis*, 74 id. 28 ; *Mushlit* v. *Silverman*, 50 id. 360 ;

*Payne* v. *Becker,* 87 id. 153; *Petrie* v. *Adams,* 71 id. 79; 72 id. 122; *Genet* v. *Davenport,* 60 id. 194.) The Kings County Mechanics' Lien Law, and section 521 and section 1204 of the New Code, gave this defendant the undoubted right in this proceeding to the affirmative relief demanded by him against his co-defendants, the owners of the property, to-wit, the foreclosure of this respondent's own mechanic's lien. (Laws of 1862, chap. 478; New Code, § 521, § 1204.) Only *bona fide* payments made by owner to contractor, without notice of the lien, are protection to the appellants after filing of the liens. (*Hall* v. *Sheehan,* 69 N. Y. 618; Lien Law of 1862, chap. 478, §§ 1–2.) The appellants having, by their notice of May 12, 1879, notified the contractors "that they would consider the contract abandoned, and would complete the house at the contractors' expense," they must be deemed to have waived the right to rescind the contract, if they had any, and to have acted for the contractors and sub-contractors in thus completing them, and the sub-contractors (the respondents) became entitled to the amount unpaid on the contract, less the fair and reasonable cost of completion. (*Wheeler* v. *Scofield,* 67 N. Y. 311; *Murphy* v. *Buckman,* 66 id. 297; *Gillen* v. *Hubbard,* 2 Hilton, 303; *Smith* v. *Ferris,* 1 Daly, 18; *Foley* v. *Gough,* 4 E. D. Smith, 724.) The equities of the mechanics and material men in mechanic's lien suits are superior to those of the owners, and the court will always award them the amount equitably due to the contractor at the time of his abandonment, whenever it can be done without conflicting with well-settled principles of law. (*Henderson* v. *Sturgis,* 1 Daly, 336.) This court will not re-open and review questions of fact determined by the court below where the judgment is in accordance with the facts determined. (*Farnham* v. *Hotchkiss,* 41 N. Y. 9; *Haight* v. *Williams,* 46 id. 683.) Appellant Pedersen's interest in the property at the time of filing the lien is properly foreclosed, because she made the contracts under which the respondents furnished their material. (*Husted* v. *Mather,* 77 N. Y. 389; *Willis* v. *Bellinger,* 6 Hun, 560; *Anderson* v. *Mather,* 44 N. Y. 249; *Rollins* v. *Cross,* 45 id. 767.) None of the orders put in evidence by appellants are

equitable assignments, or can take any preference over the liens of the respondents, or any of them. (*Hollister* v. *Hopkins*, 13 Hun, 211; 75 N. Y. 272.)

ANDREWS, J. This is a proceeding to foreclose a mechanic's lien, under chapter 478, of the Laws of 1862. The case shows that in November, 1878, the defendant Pedersen, then owner of certain lots in the city of Brooklyn, entered into a contract with the defendants Leonard and Ebury to complete certain buildings thereon and to make certain improvements, including the flagging of a sidewalk in front of the premises, for which she agreed to pay the contractors the sum of $5,100, the payments to be made as the work progressed. The plaintiff under a contract with Leonard and Ebury furnished the flagging for the sidewalk, laid the same, and performed some other work upon the premises, and filed a lien therefor April 27, 1879.

The defendants, other than the owners of the premises and the contractors, are lienors upon the same premises for work and materials done and furnished to the contractors upon the same contract. Some of the liens are prior to that of the plaintiffs and others are subsequent thereto.

The complaint in the action after averring the facts relating to the plaintiff's lien, alleges the existence of the liens of the other defendants spoken of, and demands judgment for an accounting and sale of the premises in satisfaction of the plaintiff's lien, and also a personal judgment against the contractors for the amount of the debt owing to the plaintiff. The other lienors appeared and answered in the action setting forth the particulars of their respective liens, and they likewise demanded judgment for an accounting and sale of the premises and to have the proceeds applied in satisfaction of their respective liens. The several lienors also alleged an indebtedness from the owner to the contractors on account of the contract, beyond the amount of their respective liens. The defendant Pedersen answered in the action as did also the defendant Apgar, a subsequent grantee of the premises. The court on the trial found the existence of the several liens

set forth in the pleadings and also that there was a balance un-
paid on the contract with Leonard and Ebury, and directed a
sale of the premises to satisfy the several liens and the costs
adjudged in the proceedings and directed them to be paid out
of the proceeds of the sale in the order of their priority as de-
termined by the court.

The appeal here is on the part of the owners alone, there
being no appeal on behalf of the contractors or the other de-
fendants. It is claimed on the part of the appellants that there
was no power in the court under the act of 1862, or according
to the general principles of equity, to grant affirmative relief
to the lienors who were defendants, for the sale of the premises
and the payment of their respective liens from the proceeds.
The contention is that the only relief which can be granted in
a proceeding of this character is to direct a sale and foreclosure
of the plaintiff's lien, leaving the question in respect to the
rights of the several co-defendants to be determined on an ap-
plication for the distribution of the surplus moneys arising upon
the sale. It is very clear that under the act of 1862, lienors
prior to the plaintiff were properly made defendants in the
action. The twelfth section provides that in all sales under
judgments in the proceedings, the interest of the owner should
be sold subject to all prior liens existing thereon, unless the
claimants under such liens shall be made parties to the proceed-
ings, clearly implying that prior lienors may be made defend-
ants in the action.

We are of opinion also that according to the general practice
in equity, subsequent lienors if not necessary, are proper de-
fendants for the purpose of having the amount and priorities
of their respective liens established, and that a judgment may
properly provide for a sale of premises in behalf of all lienors,
when made parties to the proceedings and for the payment to
them of their liens according to their respective rights. A pro-
ceeding for the foreclosure of a mechanic's lien is analogous
to the proceedings for the foreclosure of a mortgage, and in re-
spect to the latter it is well settled that all subsequent mortgagees
are proper parties to the foreclosure of a prior mortgage

(Story's Equity Pleadings, § 193), and the former practice in chancery permitted defendants in an action of foreclosure holding junior mortgages to litigate as between themselves, all questions arising in respect to the existence and priority of their several mortgages. In *Beekman* v. *Gibbs* (8 Paige, 511), the chancellor granted the application of a subsequent mortgagee, who was a party to the foreclosure of a prior mortgage, to have inserted in the decree a direction to the master to sell sufficient of the mortgaged premises to satisfy the junior mortgage in addition to the complainant's mortgage, but held that since the act of 1840, to reduce the expenses of the foreclosure of mortgages in chancery, distribution of the proceeds of sale could not be made to subsequent incumbrancers until after the master's report of the sale had been filed and the surplus money brought into court, for the reason that as by that act judgment creditors were not necessary parties to the foreclosure, and were cut off by the sale, they should have an opportunity to be heard in respect to the distribution. In the subsequent case of *Tower* v. *White* (10 Paige, 395), which was an action of foreclosure, the chancellor said, " Previous to the adoption of the 123d and the 136th rules of this court, junior incumbrancers, who were made defendants, not only were authorized to litigate their claims with the complainant, but also with their several co-defendants, previous to the decree of sale. And as a general rule they were required to do so. (*Renwick* v. *Macomb*, Hopk. Ch. 277.)" " The object of these two rules," the chancellor further said, " was to relieve the complainant from the expense and delay of the litigation between co-defendants, or of attempting to set up their respective rights in his bill." There was undoubtedly great inconvenience in permitting co-defendants in a foreclosure action to litigate between themselves in that action, questions in which the complainant had no interest, and while the power of the court to permit such a litigation cannot well be denied, it has been the recent practice for the court to decline to delay the plaintiff in his proceedings, to await the determination of a controversy between co-defendants. ' It cannot, however, we think be doubted that

in proceedings under the Mechanic's Lien Laws, it is the most convenient and expedient practice to permit the adjustment and settlement in a single action, of all liens upon the premises arising under the same contract, and we think this practice is justified not only by the inherent power of a court of equity in the absence of statutory regulation to control and manage its procedure, but by the provisions of the Code of Civil Procedure. Section 1204, which is a substantial re-enactment of section 274 of the prior Code, provides that judgment may be given for or against one or more plaintiffs, and for or against one or more defendants. "It may determine the ultimate rights of the parties on the same side as between themselves, and may grant to the defendant any affirmative relief to which he is entitled." It has been remarked in several cases in respect to section 274 above referred to, that the affirmative relief spoken of in this section, was relief against the plaintiff, and one of the reasons given for this construction was that the section contained no provision for an issue as between co-defendants, or for any notice from one to the other of any hostile claim made by them respectively. This difficulty as to defendants who appear and answer, has been removed by section 521 of the Code of Civil Procedure, which is a new provision not contained in the former Code. That section provides as follows: "Where the judgment may determine the ultimate rights of two or more defendants as between themselves, a defendant who requires such a determination, must demand it in his answer, and must at least ten days before the trial serve a copy of his answer upon the attorney for each of the defendants to be affected by the determination. The controversy between the defendants shall not delay a judgment to which the plaintiff is entitled, unless the court otherwise directs." In this case copies of the answers of defendants, lienors, were served upon their co-defendants, the owners, against whose property the liens were claimed, and the latter had an opportunity to contest the liens and assert any defense thereto. It is to be observed that the objection now made is on the part of the owners alone. The court took evidence of all the facts neces-

sary to determine the existence and priorities of the several liens; the plaintiff interposed no objection, and we are of the opinion that the court had power as incident to the determination of the rights of the respective lienors, to adjudge a sale of the premises and to direct the several liens so established to be paid from the proceeds. (See opinion of WRIGHT, J., in *Smart* v. *Bement,* 4 Abb. Ct. App. Dec. 253.)

We will now consider other objections made on the part of the appellants. It is claimed that the judgment is erroneous in the fact that it directs a sale of the right, title and interest which the owner had in the premises February 12, 1879, or at any time thereafter, whereas the lien of the plaintiff was not filed until April 29, 1879. But in this respect the judgment departs from the direction contained in the decision of the court, and where a judgment does not conform to the decision, the remedy of the party aggrieved is by application to the court to correct the judgment, and not by appeal. Another answer to the objection is that as there was no change in the title between February 12, 1879, and April 29, 1879, when the plaintiff's lien was filed, the point is wholly immaterial.

It is further claimed that the judgment is erroneous on the ground that it directs a sale of the premises and a satisfaction of the plaintiff's lien out of the proceeds, when it appears by the findings in the case that there were prior liens to be paid more than sufficient to exhaust the sum owing by the owner to the contractors. This objection, if founded in fact, would doubtless be a valid one. But it is only true upon the theory that the owner cannot be adjudged to pay the costs of the proceeding in addition to the sum found to be due to the contractor. If the costs are not chargeable against the balance found to be unpaid, then the prior liens adjudged to be paid did not exhaust the sum due to the contractors. The lien of Leonard and Ebury, the contractors, is subordinate in equity to the liens in favor of the other parties for debts owing by them, and moreover they have acquiesced in the judgment. (*Kaylor* v. *O'Connor,* 1 E. D. Smith, 675.) We are of opinion that the court had power to adjudge costs to be paid in favor of the

co-defendants against the owners.   The expenses of the litiga-
tion were mainly caused by them in resisting liens claimed by
the respective parties.   Costs in equity are discretionary, and
a reference to the sixth, ninth and thirteenth sections of the
law of 1862, will show that it was contemplated that costs
might be adjudged against the owner in proceedings for the
enforcement of a lien.   It is true that the first section provides
that the owner shall not be obliged to pay, in consideration of
all liens authorized by the act, any greater sum or amount than
the price stipulated and agreed to be paid by the owner in his
contract, but the costs are charged against the fund, not by
virtue of a lien created by the act of 1862, but according to the
general principles of equity and under a power lodged in the
court to adjudge the payment of costs as incident to the
litigation.

The point is also taken that there was error in finding the
amount of the plaintiff's lien, on the ground that it included
the expense of a sidewalk constructed by the plaintiff on the
street and avenue adjoining the house to which the contract of
Leonard and Ebury related.   It is claimed that as the lot of
the owner is bounded by the side of the street and does not
include it, the expense of constructing the sidewalk cannot be
made a lien upon the lot under the act of 1862.   We are of
opinion that the case of *Moran* v. *Chase* (52 N. Y. 346) de-
cides this question adversely to the appellants; for although it
did not appear in that case affirmatively that the party against
whom the lien was claimed did not own to the center of the
street, the decision was not placed upon the legal presumption
of such ownership, but upon the broader ground that the word
" appurtenances " covered the making of a sidewalk in front of
the premises upon which the building was erected.   We think
we should not be justified in applying a different rule upon the
distinction now suggested.   The owner of a lot abutting on an
avenue or street has an interest therein in common with the
public at large, but also a special and peculiar interest, and we
think it may be fairly held that a sidewalk in front of a build-

ing is an appurtenance thereto within the meaning of the lien law.

The point that several small orders drawn by Leonard and Ebury, other than that in favor of Richardson, Boynton & Co., constituted equitable assignments to the amount of the several orders of the money due upon the contract, is not presented by any finding or exception and cannot be considered on this appeal.

The counsel for the owners, after the trial had commenced, demanded that the issues between them and their co-defendants should be tried by jury, at the same time stating that he waived such trial as between themselves and the plaintiff. The court overruled the demand on the ground that it was made at too late a stage in the action. We think the denial may be sustained upon the ground upon which it was placed by the court. At the commencement of the action, the defendants' counsel objected to the trial of any issue between his clients and their co-defendants, or the taking of any evidence in regard to the issue between them, but he did not at that point make any objection to proceeding with the case on the ground that they were entitled to a trial by jury, and the demand for such trial was not made until near the conclusion of the direct examination of the plaintiff. Subdivision 4 of section 1009 of the Code of Civil Procedure, provides that a party may waive his right to a trial by jury, " by moving the trial of the action without a jury, or if the adverse party so moves it by failing to claim a trial by jury before the production of any evidence upon the trial." And within this section there was, we think, a waiver of this right, if such existed, on behalf of the defendants. But we think it is also a conclusive answer that the action was an action in equity, triable by the court without a jury, as to which neither party had a right to a jury trial except as to such issues as might be framed and sent to a jury.

It was not necessary to the validity of the lien that a copy of the notice of lien should be served upon the owner. That is only necessary to prevent payments by the owner to the

contractor after the filing of the lien to the prejudice of the lienor. (*Hall* v. *Sheehan*, 69 N. Y. 618.)

The point that it did not appear that the lien of defendants Ropes, was filed within three months after the furnishing of the labor and materials by them, which was a consideration of the lien, was not raised by any exception in the case, and that point cannot now be taken.

The only remaining question which we deem it necessary to consider relates to the aggregate amount of the liens, which by the judgment are directed to be paid out of the proceeds of sale. There is no question but that the aggregate amount of the liens chargeable against the owner cannot exceed the sum owing by him to the contractor. The court finds that of the $5,100 payble by the contract to Leonard and Ebury, $3,200 had been paid by the owner in cash. It is also found that the owner completed the buildings after Leonard and Ebury had ceased to work upon them, under notice to them that the owner would complete them on their account, and that she necessarily expended for such completion, $600. The contract was not declared to be forfeited by the owner by reason of non-completion of the contract by the contractors, and the court finds that they stopped work upon the buildings by reason of the owners' declining to pay them according to contract. The contractors were, therefore, entitled to $1,300 after the completion of the buildings, and this sum, with interest, was the full amount unpaid on the contract. The order of April 7, 1879, drawn by Leonard and Ebury in favor of Richardson, Boynton & Co. for $390, payable out of the last payment on the contract, was held by the court to be an equitable assignment of that sum out of the contract price, and this point is not now controverted. It is found that the agent of the owner paid in full settlement of this order the sum of $350 ; the owner was entitled to be credited on the sum unpaid on the contract, either, as she claims, the whole sum of $390, or the sum actually paid to the drawees in satisfaction of the order. We are of opinion that she was entitled to charge as against the sum unpaid on the contract, the full amount of the order, and that

the discount which is allowed by the drawees of the order inured to her benefit, and not to that of the lienors. After applying the sum of $390 upon the $1,300 unpaid, the liens directed to be paid by the judgment exceed the balance unpaid by the owner, and we think the judgment should be modified by directing payment of the several liens in the order of priority fixed by the judgment, to the extent of $1,300 and interest thereon from May 1, 1879, to the time of the sale, after deducting therefrom the amount of Ryan's lien, found to be outstanding, and the sum of $390, the amount of the order to Richardson, Boynton & Co.

The judgment should, therefore, be affirmed as modified, without costs to either party.

All concur.

Judgment accordingly.