George Colon & Company, Appellant, v. Sarah B. Smith, Respondent, Impleaded with Michael J. Fitzgerald, Defendant.

First Department, May 18, 1917.

Liens — mechanic's lien — failure to file within ninety days — when lien may not be filed for restoring sidewalk in connection with contract.

Where, in an action by a subcontractor for the foreclosure of a mechanic's lien under a contract to excavate earth and rock, it appears that the excavation was completed more than ninety days prior to the filing of the . lien, and that work performed by the plaintiff in restoring sidewalks within the ninety days before filing the lien constituted no part of the improvement made upon the land for the benefit of the owner, the complaint should be dismissed.

The only work for which a lien may be filed is the work which the contractor is engaged to perform in improving the premises.

The contract being merely to excavate, and the interference with the walk having been made for the convenience of the contractor, the duty to restore the walk, whether implied or expressed, constituted no part of the improvement made upon the land for the benefit of the owner for which a lien could be filed either by a contractor or by a subcontractor.

Smith and Page, JJ., dissented, with opinion.

Appeal by the plaintiff, George Colon & Company, from a judgment of the Supreme Court in favor of the respondent, entered in the office of the clerk of the county of Bronx on the 3d day of August, 1916, upon the decision of the court dismissing the complaint after a trial at the Bronx Special Term.

*Mortimer M. Menken*, for the appellant.

*Alexander Thain* [*Lilian Herbert Andrews* with him on the brief], for the respondent Sarah B. Smith.

Laughlin, J.:

I am of opinion that the judgment in favor of the respondent is right and should be affirmed. The respondent Smith was the owner of premises on the southeast corner of Merriam avenue and University avenue (formerly Aqueduct avenue), borough of The Bronx, New York city. In the month of March, 1913, she entered into a verbal contract with the defendant Fitzgerald for the excavation of the lot with a view

to building an apartment house thereon. Fitzgerald was called as a witness by the plaintiff, and the only evidence with respect to the contract is his testimony which, so far as material to the issue presented for decision, is to the effect that it was agreed between him and the owner that he should excavate the earth and rock according to architects' plans that had been filed with the department of buildings and that he was to receive for his services eighty-five cents per cubic yard for earth and one dollar and ninety cents per cubic yard for rock excavation.

He entered upon and continued in the performance of the work until the 22d of April, 1913, at which time, by a contract resting in parol, he sublet the remaining work to the plaintiff at the same rate, but for an additional consideration.

The owner paid Fitzgerald $1,900 on account of the work which he claims covered the work performed prior to the subletting. The president of the plaintiff testified that his company " continued excavating the premises until the work was complete." On completion the further sum of $3,536.30 became due and owing from the owner to Fitzgerald, and from him to the plaintiff for this work, no part of which has been paid. The plaintiff, however, claims that the work performed by Fitzgerald before subletting the unfinished work to it would not amount to $1,900, and on that theory the plaintiff's claim was for more than the balance owing from the owner. Plaintiff's lien was filed on the 4th of April, 1914.

The complaint was dismissed on the ground that the lien was not filed " within ninety days after the completion of the contract, or the final performance of the work, or the final furnishing of the materials, dating from the last item of work performed or materials furnished," as required by section 10 of the Lien Law. (Consol. Laws, chap. 33; Laws of 1909, chap. 38).*

One Hess, who was employed and called by the plaintiff, testified in answer to a question asked by the court, that the plaintiff considered that it had finished this excavation work in the spring of 1913.

It appears that on the 23d of May, 1913, the owner entered

* Since amd. by Laws of 1916, chap. 507.— [REP.

into a contract in writing with the plaintiff "to build the foundation stone walls and put in the concrete footings" for an apartment house, and plaintiff agreed to complete the work in less than eight working days. The testimony of Fitzgerald, which is uncontroverted, shows that about two days prior to the date of that contract, he introduced Hess, representing the plaintiff, to the owner with a view to obtaining for plaintiff the contract for the foundation walls, and that at that time the excavation was about completed and ready for the construction of the foundation walls. Notwithstanding the fact that the plaintiff by its agreement with the owner contracted to complete its contract work in less than eight days from the twenty-third day of May, it did not commence the work until the twelfth day of June, and then did not finish it until the first of July, when, according to the testimony of Colon, the president of the plaintiff, the work was practically completed. The owner testified in substance that she had negotiated a loan upon the theory that the building would be completed and ready for occupancy by tenants in the fall, and that the delay of the plaintiff in performing its contract for the erection of the foundation rendered this impossible, and that for that reason she was unable to procure the loan and was obliged to abandon further work on the building. There can be no doubt on this and other evidence that the earth and rock excavation covered by the contract between the owner and Fitzgerald and sublet in part to the plaintiff was completed more than ninety days prior to the filing of the lien.

The work claimed to have been done within ninety days of the filing of the lien relates to certain work done on the 7th of January, 1914, consisting of the removal of rock which when excavated was placed on adjoining premises, and to the restoration of the sidewalks, and to the removal of some loose stones from the cellar. The president of the plaintiff testified that when his company entered upon the performance of the work of excavating the earth and rock it continued in the performance of that work until it was completed; and thereupon the court asked when the excavation was completed, and he answered that it was completed in January; whereupon the court, evidently in view of the fact that all of the

evidence received prior to that time tended to show that the work of excavating was completed at about the time the plaintiff entered upon the performance of the construction of the foundation, asked, "What?" to which the witness answered "In January, 1914, removing the rock from adjoining premises, fixed the sidewalks." The witness also testified that in the month of November or December, 1913, the owner insisted that the rock should be removed from the adjoining premises, and that rubbish should be removed, and the sidewalks and curb fixed; and that payment of the balance owing on the contract for excavating would not be made until that was done; and that thereupon his company cleaned out the cellar, removed the rock from the adjoining premises and cleaned or repaired or restored — he does not specifically say which — the sidewalks; and that thereafter and in the latter part of December the owner still complained "about sidewalks, was in bad condition, and fragments" and claimed that these things were part of the excavation contract. Hess was asked what work was done on the 7th of January, 1914, in connection with this claim; and he answered "removing the boulders and building stone from the adjoining property, also the loose stones in the cellar, and fixing up the sidewalk;" and that he saw big stones broken up so that they could be put on a wagon and carted away, and saw ten or twelve loads taken away that day. This is the only evidence with respect to the work done within ninety days of the filing of the lien. In so far as it relates to the removal of loose stones from the cellar and of the boulders or building stone from the adjoining premises it is quite clear, I think, that the plaintiff did not sustain the burden of proof, for the president of the plaintiff, who gave some testimony on this subject, had already testified that the rock had been removed and the cellar cleaned out prior to that time; and by letters under date of July 1, September 9, October 7, October 13 and October 16, 1913, written by the plaintiff to the owner the plaintiff insisted that it had completed all this work; and by the letter of September 9, 1913, it claimed that the cellar had been cleaned up in proper shape, and that "the work is absolutely completed in every way" and it demanded the balance owing on the contract which it claimed it was under-

stood was to be paid by the owner to the plaintiff. The only evidence, therefore, with respect to the work done on the seventh of January, which was uncontroverted, was that relating to the sidewalk. Moreover it does not appear that Fitzgerald undertook to remove the material to any particular place and, therefore, it did not concern the owner if he stored the rock on the adjoining lands with the consent of the owner thereof or committed a trespass in so doing. (See *Berg* v. *Parsons,* 156 N. Y. 109.) Furthermore, there is evidence tending to show that both the owner and plaintiff were desirous of having the excavated rock left in the vicinity to be used in the construction of the foundation walls and building. It is perfectly clear on the evidence that the contract for the excavation under which this lien was filed did not embrace any work with respect to the sidewalk.

As already observed, the only evidence with respect to what was embraced within the excavation contract is the testimony of Fitzgerald, who expressly states that there was no agreement between him and the owner with respect to the sidewalk. Aside from claims made by the owner, by letters and verbally, that it was the duty of both Fitzgerald and the plaintiff, under the respective contracts, the one for the excavation and the other for the construction of the foundation, to restore the sidewalk, there is no other evidence on the subject; but it appears by a letter written by the owner to Hess, intended for the plaintiff, on the 5th of June, 1913, that she claimed to have deposited $250 with the city authorities as security for the restoration of the sidewalk by Fitzgerald; and she testified that she did this to enable Fitzgerald to obtain a permit to haul the excavated material over the sidewalk, and that he, as a condition of obtaining the license, promised and agreed to restore the sidewalk to the condition it then was in; and that in the month of September she considered the sidewalk properly restored and was satisfied with it; but that the city inspector was not, and that, therefore, the city authorities did not return the money so deposited and which she testified was deposited by Fitzgerald, but thereafter admitted that it was probably deposited by her as stated in said letter. There is no *direct* evidence with respect to any injury or damage to or interfer-

ence with the sidewalk by Fitzgerald; but when the owner abandoned completing the building as cold weather was coming on in the fall, she called upon him to restore the flagging and he testified that he reflagged the sidewalk on Merriam avenue and that the plaintiff at his request reflagged it on University avenue, which accords with the testimony first given by Colon with respect to when the sidewalk was repaired. Prior to December 1, 1913, it appears from letters written by the owner to Hess, intended for the plaintiff, and by testimony with respect to verbal claims made by her that she insisted that the sidewalk should be restored either by Fitzgerald or the plaintiff to the satisfaction of the inspector representing the city, before she would make any further payment; but on the last mentioned date she wrote the president of the plaintiff, stating that she expected to settle with Fitzgerald that month and hoped that in the meantime his company and Fitzgerald would settle their differences, and that she would notify him of the time and place of payment; and that the $250 deposited with the city would be withheld until the plaintiff or Fitzgerald restored the sidewalk to the satisfaction of the city authorities.

The evidence concerning what was done with respect to the sidewalk on the 7th of January, 1914, is altogether too indefinite to require a finding that it was any part of the work which Fitzgerald was obligated to do, either under his contract for excavating the lot or pursuant to the arrangement by which he obtained a permit to use the sidewalk and the owner deposited the money required by the city therefor; but in any event, at most, it *relates* to some work which it was the duty of Fitzgerald, under the conditions of the permit and under his agreement with the owner with respect to furnishing the security for the permit, to perform, and constituted no part of the excavation work.

Although there was an obligation flowing from Fitzgerald to the owner to restore the sidewalk, which obligation arose either out of his interference with the sidewalk or by virtue of his agreement at the time the owner furnished the security for the permit, there is upon no theory any evidence of an agreement on the part of the plaintiff to perform such obligation on the part of Fitzgerald to the owner. It is

fairly to be inferred that in so far as the sidewalk was interfered with such interference occurred before the work was sublet to the plaintiff and it does not appear that the plaintiff agreed to do anything other than to complete the excavation of the earth and rock.

As I view the case, therefore, whatever work was done with respect to the sidewalk on the seventh day of January was exacted by the owner as a performance of Fitzgerald's obligation to her, arising on an implied duty or out of the agreement made at the time she deposited the money for the permit, and it constituted no part of the work of excavation for which a valid mechanic's lien could be filed, either by the contractor or by a subcontractor. The work for which a lien may be filed is the work the contractor is engaged to perform in improving the premises. The authorities upon which the learned counsel for the appellant relies holding that a mechanic's lien may be filed for constructing a sidewalk in connection with the improvement of real estate (*Mosher* v. *Lewis*, 14 App. Div. 565; *Kenney* v. *Apgar*, 93 N. Y. 539, 549; *Moran* v. *Chase*, 52 id. 346) have no application here where the contract was *merely to excavate* and the interference with the walk was for the *convenience* of the contractor and, therefore, the duty to restore the walk, whether implied or expressed, constituted no part of the *improvement* made upon the land for the benefit of the owner for which a lien could be filed either by the contractor or by a subcontractor. (See Lien Law, § 3.)

The judgment should be affirmed, with costs.

SCOTT and SHEARN, JJ., concurred; SMITH and PAGE, JJ., dissented.

PAGE, J. (dissenting):

The plaintiff is a subcontractor who performed work in excavating for a building to be erected upon the defendant's premises in the city of New York.

It was shown that there was a balance due to the plaintiff's contractor at the time of the filing of the lien of $3,536.30 and the amount of work done by the plaintiff was $3,939.80, for which payment has not been made. The learned justice at the trial, however, dismissed the complaint, upon the ground that

the notice of lien was not filed within ninety days after the performance of the last items of work under the contract, pursuant to section 10 of the Lien Law (Consol. Laws, chap. 33; Laws of 1909, chap. 38).* It appears that the notice of lien was filed on the 4th day of April, 1914, and the plaintiff claimed that the last item of work performed under the contract was done on the 7th day of January, 1914, or eighty-eight days prior to the filing of the notice of lien. The evidence shows that the contract was substantially completed during the summer of 1913, but that thereafter the defendant's agent repeatedly wrote to the plaintiff demanding that the rubbish be removed and the sidewalk repaired, and made the doing of this work a condition precedent to making the final payment. The testimony of George Colon, president of the plaintiff, and of Joseph Hess, an employee of the plaintiff, that the work of removing the rubbish and repairing the sidewalk was completed on January 7, 1914, is uncontradicted. It is evident from the correspondence between the defendant's agent and the plaintiff that the defendant claimed that this work was within plaintiff's contract, and that plaintiff eventually accepted this construction of the contract and performed the work. The learned justice who decided the case held that the removal of the stones from the adjoining premises was not work done upon the premises and cannot be considered as work done under the contract. He also finds that there was no proof of any work performed on the sidewalk within the period of ninety days before the lien was filed, and states that the sidewalk had been accepted by the owner as satisfactory on November 8, 1913, when she returned the sum deposited with her as indemnity to insure against improper relaying of the sidewalk. In so finding he must have overlooked the testimony shown above, both as to the removal of stones from the cellar around the seventh of January and the fixing of the sidewalk, which is uncontradicted. Though this work was unsubstantial in its nature and undoubtedly from the evidence it appears that the contract had been substantially performed several months before January, 1914, and had been accepted by the defendant, the authorities show

---

* Since amd. by Laws of 1916, chap. 507.—[REP.

that the statutory limitation as to the time of filing a lien does not date from the time of substantial performance of the contract or from the time of acceptance of the work, but dates from the time when the last minute item of work upon the contract was performed. (*Milliken Bros., Inc.,* v. *City of New York,* 201 N. Y. 65; *Chambers* v. *Vassar's Sons & Co., Inc.*, 81 Misc. Rep. 562.) As pointed out in these cases a contractor cannot of his own volition perform some minute detail of work or deliver material to the premises after the completion of the contract, for the purpose of renewing his right to file a lien; but where, at the request of the person against whom the lien is claimed, additional work or materials are furnished upon the premises in good faith, the time for the filing of the lien is ninety days from the date of such performance.

In the case at bar the removal of the stones from the cellar and the fixing of the sidewalk are shown to have been done in answer to the defendant's demands, and in my opinion the notice of lien was sufficient if filed within ninety days of January 7, 1914. A sidewalk has been held to be an appurtenance of the premises within the meaning of the Lien Law, and work done upon it is, in contemplation of law, work done upon the premises. (*Kenney* v. *Apgar,* 93 N. Y. 539.)

The judgment should be reversed and judgment granted for the plaintiff, with costs.

SMITH, J., concurred.

Judgment affirmed, with costs.