GRIFFIN v. ERNST.

(Supreme Court, Appellate Division, First Department. February 21, 1908.)

MECHANICS' LIENS—RIGHT TO LIEN—NATURE OF IMPROVEMENT—MACHINERY.

Mechanics' Lien Law, Laws 1897, p. 516, c. 418, § 3, gives a contractor performing labor or furnishing materials for the improvement of real property a lien therefor. Section 2 (page 515) provides that the term "improvement" includes the erection, alteration, or repair of any structure connected with real property, and any work done on such property or materials furnished for its permanent improvement. Section 22 (page 525) requires a liberal construction. *Held*, that machinery purchased for

the purpose of fitting up an empty building as a manufacturing establishment, and by the installation of which it was so altered, was an improvement entitling the contractor furnishing the same to a lien.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Mechanics' Liens, § 37.]

Ingraham, J., dissenting.

Appeal from Special Term.

Action to foreclose a mechanic's lien by Henry C. Griffin against Gustav Ernst and another. Judgment for defendants, and plaintiff appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Griggs, Baldwin & Pierce (Franklin Pierce, of counsel. Phillip S. Hill, on the brief), for appellant.

Edward Herrmann, for respondent.

CLARKE, J. This is an action to foreclose a mechanic's lien. The defendant Ernst was the owner in fee of the piece of real property known as Nos. 757–759 East 165th street, in the borough of the Bronx, in the city of New York. Upon said property when bought by Ernst was a two-story frame structure 50 feet by 72 feet in size, unceiled and unplastered, the inside rough and the joints exposed. It had been used by a prior owner as a sash factory, the machinery of which was run by a large steam engine. All of the machinery of the sash factory had been removed, and the building was vacant when Ernst purchased it. Defendant testified that prior to that time he had a much smaller plant, and had just bought this property and was starting a bigger plant; that he bought it for the purpose of running a manufacturing establishment there; that he adjusted it to manufacturing machinery; that he was fitting it up for manufacturing purposes, manufacturing general iron work for buildings; that he had been for 17 years a manufacturer, and intended to carry on his business in that place as long as it suited him. He entered into a contract in writing with the plaintiff, under which the plaintiff was to furnish and put up certain specified machinery, and an electric motor, mostly secondhand articles, for which the plaintiff agreed to pay the sum of $1,550. The machinery was installed and the defendant paid a portion of the sum agreed, but, having failed to pay the balance, a mechanic's lien in the sum of $1,031.75 was filed, and this action thereafter brought to foreclose the same. The learned court at Special Term in its decision found: That the defendant was the owner in fee of the property in suit. That the contract was made. That the notice of lien was filed containing all the statements required by and in all respects complying with the statute, was duly docketed, and a copy thereof served upon the defendant Ernst, the owner. "Fourth. That said lien has not been paid, canceled, or otherwise discharged, and that no other action or proceeding has been brought by the plaintiff for the foreclosure of the same, or for the recovery of the money intended to be secured thereby. Fifth. I find that the machinery furnished to the defendant, Gustav Ernst, could be removed without injury to the building. Sixth. I find that the plaintiff has failed to make out a case

to entitle him to a lien under the mechanics' lien law"—and found as a conclusion of law that the defendant, Ernst, is entitled to a judgment dismissing the plaintiff's complaint, which judgment was thereafter entered.

The appellant claims that the finding of fact "that the machinery furnished to the defendant Gustav Ernst could be removed without injury to the building" is insufficient to support the conclusion of law that the defendant is entitled to recover judgment dismissing the complaint; but the fifth finding so criticised must be read in connection with the sixth, "that the plaintiff has failed to make out a case to entitle him to a lien under the mechanics' lien law." If that finding is supported by the evidence, it is enough to justify the conclusion.

The machinery in suit here was to a large extent secondhand. It was therefore not made for the special purpose of installation in this building, and had no particular characteristics which adapted it exclusively to this building. No extensive alterations of the building were required or made for its installation, and nothing in the way of permanent foundations, piers, or chimneys were required or constructed. It was attached to the floor, to the joists, and to the beams of the ceiling by lag screws, and the evidence is overwhelming that such machinery so attached is often removed from buildings and installed in others, as was, in fact, this machinery, and fairly supports the finding that the machinery here installed could be removed without injury to the building. At the same time, it must be borne in mind that this machinery was furnished to the owner of this real property for his own use, for the purposes to which he designed the property, namely, for the prosecution of the manufacturing business for which he had bought the property and in which he was and is engaged. Before the installation of the machinery, the building was a bare structure. After the installation it was a manufactory. It had been bought by the defendant for the purpose of so transforming it into a manufactory, and by the materials furnished by the plaintiff and the labor used at the defendant's request it had been so transformed.

Section 3 of the lien law (chapter 418, p. 516, of the Laws of 1897) provides as follows:

"A contractor, subcontractor, laborer or materialman who performs labor or furnishes materials for the improvement of real property, with the consent or at the request of the owner thereof, or of his agent, contractor, or subcontractor, shall have a lien for the principal and interest of the value or the agreed price of such labor or materials upon the real property improved or to be improved, and upon such improvement from the time of the filing the notice of such lien as prescribed in this article."

Section 2 (definitions) provides that the term "improvement" when used in this chapter "includes the erection, alteration, or repair of any structure upon, connected with, or beneath the surface of any real property, and any work done upon such property or materials furnished for its permanent improvement." The present lien law is simpler in its language and more comprehensive in its provisions than any that preceded it. It expressly provides in section 22 that "this article is to be construed liberally to secure the beneficial interests and purposes thereof."

In Sears v. Wise, 52 App. Div. 118, 64 N. Y. Supp. 1063, the plaintiff had made a contract to deliver and install certain milling machinery to the firm of Russell & Burkett, said firm agreeing to pay therefor the sum of $1,853. A feed mill of the value of $325, being part of said machinery, was put in operation, adjusted, and accepted. The other machinery was to constitute part of a plant for manufacturing brewers' grists and meals. It was delivered, but its installation was delayed by a fire, and later by the bankruptcy of the firm. Plaintiff filed a mechanic's lien for the contract price of the machinery and interest. The answers interposed admitted that the feed mill was used in repairing the plant, but denied that the other machinery was used in or upon the premises. The case was tried on the part of the defendants upon the theory that plaintiff acquired a valid lien for the value of the feed mill which had been installed, but not for other machinery, because it had not been installed. The court said:

"The plaintiff performed his contract, except as he was prevented by the failure of said firm and of its trustee in bankruptcy to install the machinery. The materials were furnished and delivered for the permanent improvement of the premises against which a lien is claimed. The Legislature has directed that this lien law shall be interpreted liberally to secure the beneficial interests and purposes thereof. Section 22. On these facts such a construction requires that a lien be declared in favor of the plaintiff for the machinery delivered and not installed, as well as for that actually installed."

The appellant urges that a decision holding that a lien attaches where machinery has been delivered, but not installed as a permanent improvement to the real estate, when the building for which it was intended has been burned, is a conclusive authority where machinery has not only been delivered, but actually installed; but it was admitted in that case that a valid lien for the value of the feed mill, a part of the machinery which had been installed, was acquired, which was an admission that the machinery was intended to constitute a permanent improvement, and therefore the court held that, the materials having been furnished and delivered for the permanent improvement of the premises, the language of the act being, "or materials furnished for its permanent improvement," the physical act of installation was unnecessary, and the lien had been acquired. This case, therefore, is not decisive of the question where the fact is in issue as to whether the material was furnished for a permanent improvement, although illustrative of the trend of judicial interpretation of this statute.

So in Schaghticoke Powder Co. v. G. & J. Railway Co., 183 N. Y. 306, 76 N. E. 153, 2 L. R. A. (N. S.) 288, 111 Am. St. Rep. 751, where the Court of Appeals held that a powder company had a lien against a railroad for dynamite furnished and used in the blasting of frozen earth in the construction of its permanent embankment upon which its tracks ran, the court said:

"The argument that dynamite is not a material, but a part of the contractor's plant, which, like picks and shovels or mechanical appliances, are used in the performance of work, but are not considered materials furnished within the purview of the statute, seems to us inherently unsound. A steam shovel, an engine and boiler, picks, shovels, crowbars, and the like are tools and appliances, which, while used in the doing of the work, survive its performance and remain the property of their owner. Not so, however, with mate-

rials that are used up in the performance of the work, and are thereafter invisible, except as they survive in tangible results. We think that explosives, when used as substitutes for other recognized materials, are covered by the same principle. They enter into and form a part of the permanent structure quite as much as earth, rails, ties, culverts, and bridges that we can see and feel."

In that case the dynamite went into the construction of the permanent structure, which permanent structure remained a physical and tangible thing, and itself real property. In and of itself dynamite would hardly be defined as a fixture. In both cases above cited the controlling factor was the permanent result intended to be accomplished by the use of the materials furnished.

Chapter 342, p. 585, Laws 1885, as amended by chapter 673, p. 453, Laws 1895, the former lien law, provided, inter alia, that any person "who shall hereafter perform any labor or services or furnish any materials which have been used in improving or equipping any house, building or appurtenances with any chandeliers, brackets or other fixtures or apparatus for supplying gas or electric light" might have a lien therefor. Such articles could clearly have been removed without injury. Nevertheless, for the purposes of the act, they were regarded as so affixed to the realty as to become part thereof. In the Schaghticoke Powder Company Case, supra, the court reviewed the prior lien laws of the state and the report of the commissioners of revision, and said:

"It would be difficult to suggest anything more comprehensive than the language used in the present statute. Any 'contractor, subcontractor, laborer, or materialman who performs labor or furnishes materials for the improvement of real property' shall be entitled to a lien. When this language is contrasted with the specific and restricted phrases of the former statutes, it is plain that the Legislature intended to bring all labor performed or materials furnished in the improvement of real estate, no matter by what name they may be called or by what description they may be designated, within the liberal and beneficent purposes of the statute."

When we take into consideration in the case at bar the character of the property when the defendant bought it, the purposes for which he bought it, the fact that the machinery in question was procured for the purpose of improving the property by changing it from an empty frame building into an active, going concern as a manufactory, and that the installation of this machinery actually brought about that transformation, it seems to me it would be a close and narrow construction, rather than a liberal one to carry out the beneficial purposes and interests of the act, to hold that the contractor was not entitled to his lien.

It follows, therefore, that the judgment dismissing the complaint should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except INGRAHAM, J., dissenting.

INGRAHAM, J. I dissent. It seems to me perfectly clear that this machinery was installed in this building for the owner's use, and not in any way as an improvement of the real property within the provisions of section 3 of the lien law (chapter 418, p. 516, Laws 1897). Improving real property is one thing, furnishing a house or building with furniture or other appliances to make the use of the real property convenient or profitable is quite another; and it seems to me that all the

machinery that the plaintiff furnished came distinctly within the latter class. There was no improvement of real property, because there was nothing added to the real property by the plaintiff that became a part of the realty, or which in any way improved it.

I think the judgment should be affirmed.