AMERICAN RANGE LINES, INC. (FORMERLY AMERICAN RANGE-LIBERTY LINES, INC.), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 25160.    Promulgated November 8, 1951.

*George E. Beechwood, Esq.*, for the petitioner.
*Ellyne E. Strickland, Esq.*, for the respondent.

OPINION.

OPPER, *Judge:* The identical facts were before us in *Lucille H. Rogers*, 11 T. C. 435, revd. (C. A. 3) 180 F. 2d 720. We there held in the case of an individual taxpayer who was a shareholder in the present petitioner that what she received was in the nature of a distribution of petitioner's earnings, which in turn represented part payment to it for assets of which the transfer created the consideration for the payment. That conclusion was disapproved on review with the comment in part that: "In the absence of a suggestion of fraud, we are all bound to acquiesce in the judgment of Liberty [the purchaser] that the purchase price for the interest of Mrs. Rogers in the business was the amount paid her, and the value of the interest of Range [petitioner] was the value of the contract of dissolution between Range and Liberty."

There can, of course, be no assumption of fraud in the arrangement

which we were then and are now examining. The numerous cases where a payment by a purchaser or lessee of a corporation's property is made directly to its stockholders contain no suggestion that the form of the arrangement is more effective than its substance, or that the parties were engaged in an illegal or fraudulent operation. See, e. g., *Commissioner* v. *Court Holding Co.*, 324 U. S. 331; *United States* v. *Joliet & Chicago Railroad Co.*, 315 U. S. 44. It could not have mattered to Liberty who received the consideration for the transfer of the business. But in any event, the principle to be applied is that which we quoted in the *Rogers* case, *supra*, p. 440:

"* * * all sums of money and considerations agreed to be paid for the use, possession, and occupation [here, the sale] of the corporate property belongs to the corporation, the legal owner of such corporate property. It is by way of dividends that the stockholders are entitled to the earnings of the road * * *." *Rensselaer & Saratoga Railroad Co.* v. *Irwin* (Dist. Ct. N. Dist. N. Y.), 239 Fed. 739, 746; affd. (C. C. A., 2d Cir.), 249 Fed. 726. * * *

By the express terms of the contracts between the respective parties the agreement with W. S. A. for the operation of the vessel and the profits and other proceeds accumulated from its successful prosecution were, as we noted in *Lucille H. Rogers, supra*, " 'granted, bargained, sold, conveyed, transferred, assigned and set over' " as a part of the transaction.[1] There is no evidence as to how much these assets were worth. It may be, as petitioner now contends, that they were less valuable than the total consideration paid. If so, it is possible that upon appropriate evidence it could have been determined how much of the payment was in exchange for the corporate assets and how much, if any, was an excess inducement to Mrs. Rogers to consent to the corporation's act. But the burden was on petitioner. In the absence of any showing as to value, and in the face of respondent's determination, we cannot legitimately conclude that the consideration paid was not given for the corporate assets whose substantial earning power had already been demonstrated.

We quite agree with petitioner that the same question was involved in the *Rogers* case as that now before us, and that the decision of reversal by the Court of Appeals is an authority which could now be followed to reach a result in petitioner's favor. But, for the rea-

---

[1] That the W. S. A. contract was the property and in fact the stock in trade of petitioner appears not only from the facts of its operation, but from the scheme of organization. The original contract provides:

"This agreement shall end and terminate simultaneously with the termination of the General Agency Assignment, *under which this corporation* [*petitioner*] *proposes to conduct its business.* * * *" [Emphasis added.]

And the contract giving rise to the present controversy, as summarized in petitioner's brief, "provided that *all of the business assets* should be transferred to Liberty, and it was expressly contemplated that Liberty should receive from the War Shipping Administration the continued right to do business under the G. A. A. agreement." [Emphasis added.]

sons stated, we are respectfully constrained to maintain instead the position originally taken by us and not to rely upon the reversal as authority in the present proceeding. See *Florence Pearlman*, 4 T. C. 34, 54, affd. (C. A. 3) 153 F. 2d 560.

There remains only to be considered petitioner's contention that the *Rogers* proceedings are binding under the doctrine of res judicata. That principle is normally applicable where the issues and the parties are the same. See *Evergreens* v. *Nunan* (C. A. 2), 141 F. 2d 927, certiorari denied 323 U. S. 720; *Commissioner* v. *Sunnen*, 333 U. S. 591. It is pressed upon us here, however, that, even though the parties are different, Mrs. Rogers' status as petitioner's stockholder created a privity between them which renders the prior proceeding binding as to this petitioner. Cf. *D. Bruce Forrester*, 4 T. C. 907.

It is one thing, however, to bind the individual stockholders in their capacity as such by the official acts of their corporation, including any litigation in which it may engage.[2] It is quite another to force the corporation to conform to actions participated in by its stockholders in their individual capacity. Where the prior litigation is of this nature, it does not form the basis for estoppel by judgment in later litigation in which the corporation is a party. *Societe Vinicole De Champagne* v. *Mumm Champagne & Importation Co.*, (S. D., N. Y.), 10 F. Supp. 289, 293, affd. (C. A. 2) 143 F. 2d 240; *Cleveland-McLeod Lumber Co.* v. *McLeod*, 96 Ark. 405, 131 S. W. 878; *Spitz* v. *M. Brooks & Son, Inc.*, 210 App. Div. 438, 206 N. Y. S. 313; *Philadelphia Auburn-Cord Co.* v. *Shockcor*, 133 Pa. Super. 138, 2 A. 2d 501.

We conclude, as we did in *Lucille H. Rogers*, *supra*, that the payments in question, although made directly to her, were in fact the property of petitioner and hence constitute its income. Since the deficiency adopts the theory that the corporate income gave rise only to capital gain, the single question left open in the *Rogers* case need not now be further considered.

Reviewed by the Court.

*Decision will be entered for the respondent.*

HARRON, *J.*, dissents.

---

[2] "* * * It is also well settled that a corporation represents its stockholders in all matters within the scope of its corporate powers transacted in good faith by its officers. * * *." *Jahncke Service, Inc.*, 20 B. T. A. 837, 847.

"A stockholder is so far an integral part of the corporation that, in view of the law, he is privy to the proceedings touching the body of which he is a member. * * *" *Hawkins* v. *Glenn*, 131 U. S. 319.